LEVITT & SLAFKES, P.C.
76 South Orange Avenue – Suite 305
South Orange, New Jersey 07079
Attorneys for Plaintiff
973-313-1200
By: Bruce H. Levitt (BL9302)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

IN THE MATTER OF:

JAMES A. MULHERN, III

Debtor.

CASE NO.: 07-21617 (MBK)

Chapter 13

Judge: Michael B. Kaplan

JAMES A. MULHERN, III

Plaintiff,

v.

WELLS FARGO HOME MORTAGE
a/k/a WELLS FARGO BANK, N.A.

Defendant.

Adversary Proc. No. 08-2164

First Amended Complaint Seeking Damages in Core Adversary Proceeding

Introduction

1.     This is an action for actual and punitive damages filed by the debtor pursuant to Sections 105, 362 and 506 of the Bankruptcy Code, the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692 et seq. (hereinafter referred to as "FDCPA"), and the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. (hereinafter referred to as "Acts" and "NJCFA").

2.     This action is also filed to enforce and to implement other Bankruptcy Code provisions and Rules related thereto.

## Jurisdiction and Venue

3. Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of Title 28 of the United Stated Code in that this proceeding arises in and is related to the above-captioned Chapter 13 case under Title 11 and concerns property of the Debtor in that case.

4. This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code, Section 157(b)(2) of Title 28 of the United States Code.

5. This Court has supplemental jurisdiction to hear all state law claims pursuant to Section 1367 of Title 28 of the United States Code.

6. This Court also has jurisdiction to hear the Fair Debt Collection Practices Act violations pursuant to Section 1692 of Title 15 of the United States Code; thus, federal subject matter jurisdiction is properly founded upon Section 1331 of Title 28 of the United States Code.

7. This matter is primarily a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final order. However, in the event this case is determined to be a non-core proceeding then and in that event the Plaintiff consents to the entry of a final order by the Bankruptcy Judge.

8. Venue lies in this District pursuant to Section 1391(b) of Title 28 of the United States Code.

## Parties

9. The Plaintiff in this case was and is a debtor under Chapter 13 of Title 11 of the United States Code in case number 07-21617 (MBK), which case is presently pending before this Court. The Plaintiff is hereinafter referred to as the Plaintiff or the debtor.

10. The Defendant is Wells Fargo Home Mortgage a/k/a Wells Fargo Bank, N.A. (hereinafter "Wells Fargo" or simply "Wells") with a mailing address of 1 Home Campus, Des Moines, IA 50328 does business in this District.

## Facts Applicable to All Claims for Relief

11. The Chapter 13 case of the Plaintiff was commenced by the filing of a voluntary petition with the Clerk of this Court on August 15, 2007.

12. The 341(a) meeting of creditors was held on or about September 13, 2007.

13. The Chapter 13 plan of the Plaintiff was subsequently confirmed by Order of this Court dated April 8, 2008.

14. The Chapter 13 plan as confirmed included a debt to Wells Fargo for pre-petition mortgage

2

arrears in the amount of $65,000.00.

15. Wells Fargo filed a Proof of Claim on September 14, 2007 in the total amount of $385,942.47, including pre-petition arrears in the amount of $83,512.08.

16. The Clerk of the Bankruptcy Court in this case caused a written notice of the filing, of the automatic stay, and of the 341 meeting of creditors to be mailed to all parties on the master mailing matrix by first class mail and that such notice was in fact received by Wells Fargo.

17. The debtor alleges upon information and belief that the notice mailed by the Clerk included the following warning to all creditors: **"CREDITORS MAY NOT TAKE CERTAIN ACTIONS:** The filing of the bankruptcy case automatically **stays** certain collection and other actions against the debtor, debtor's property, and certain co-debtors. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be **penalized."** (Emphasis added.)

18. The debtor avers that this document was served on the Defendant and received by the Defendant including other documents filed in this case.

19. Wells Fargo filed a *Pro Forma* Notice of Objection to Chapter 13 Plan on August 21, 2007, in advance of the scheduling of the Confirmation Hearing.

20. The Notice of Objection contained the standard language included by many mortgagees, to wit, "[t]he Secured Creditor [Wells Fargo] objects to any provision in the debtors [sic] plan which provides for an amount less than the amount due the Secured Creditor as set forth in its Proof of Claim."

21. Wells Fargo thereafter filed an amended Notice of Objection to Chapter 13 Plan on October 15, 2007, which was based upon its assertion that the proposed plan did not provide for adjusted payments to the mortgagee as purportedly required by the terms of the Note and Mortgage and, further, it was not adequately protected.

22. The Order Confirming the Chapter13 Plan was entered on April 8, 2008, and provided for the debtor to make monthly payments to the Chapter 13 Trustee in the amount of $500.00 and to either sell or refinance the mortgage on the debtor's property by December 2008.

23. The Plaintiff and Wells Fargo have a short but tortured history, actually beginning with the closing on the loan which initiated their relationship on February 28, 2003, at which time Wells announced without preamble that the original terms of the loan had to be modified to adjust for a debt to equity ratio which was too low, despite the fact that the contract price for the property was below market and, moreover, included an additional 30 acres of land surrounding the house as additional security for the loan.

24. The substitute 1098 form issued by Wells for 2003 stated that the Plaintiff had paid total mortgage interest in the amount of $15,373.04 in 2003, and the outstanding principal balance on the mortgage had been reduced from $235,200 to $233,783.67.

25. The substitute 1098 form issued by Wells for 2004 stated that the Plaintiff had paid total

mortgage interest of $16,923.29 but that the outstanding principal balance had increased to $235,866.46 from its year end position in 2003.

26. The end of year statement issued by Wells for 2004 also included an "escrow reconciliation" which stated that Wells had made a hazard insurance payment on behalf of the Plaintiff, despite the fact that Plaintiff had maintained his own hazard insurance policy in full force and effect throughout 2004.

27. Wells repeated this conducted every year thereafter, asserting the hazard insurance had lapsed and that they had to pay the premium on their own 'forced place" insurance even though the Plaintiff's insurance was always in full force and effect.

28. Wells' "pattern and practice" of paying corporate advances, even when not required, created confusion and reporting discrepancies and led to such a chaotic accounting for this loan that even an accountant was unable to determine with certainty what the correct transaction history was and an accurate total amount due on the loan.

29. In addition to the vagaries and vicissitudes presented by this inconsistent loan management by Wells, the underlying mortgage was an adjustable rate loan which periodically underwent rate changes during the period 2005 through 2007, and the loan continues to adjust. This has added to the uncertainty and unreliability of Wells' accounting and management of the loan.

30. Wells Fargo has also failed to properly account for and credit payments made by Plaintiff, providing still more uncertainty and unreliability to their handling of the loan.

31. Despite the faulty and negligent management of the loan, with the commensurate inability to accurately determine the payment history and status of the loan, Wells Fargo nonetheless began not one but two foreclosure actions against the Plaintiff.

32. Upon information and belief, the underlying mortgage in this case is not owned by Wells Fargo, but by Morgan Stanley; Wells Fargo is the servicer of the loan and not the holder in due course and Wells, accordingly, did not have standing to file the foreclosure complaint.

33. Wells Fargo's negligent management and servicing of the loan have made it impossible for the Plaintiff to know what his actual monthly payment for principal and interest should be, let alone whether there are any legitimate escrow advances which are to be factored into a given month's payments for real estate taxes.

34. As Wells Fargo is the servicer of the loan and not the actual owner, it is in Wells' best interest to maintain the account in a delinquent status in order to maximize its fees, further leading to the erroneous accounting for advances.

35. The practice of advancing hazard insurance payments on a forced place policy which is redundant and unnecessary continues unabated. As recently as July 2007, when Plaintiff has his own insurance in place, Wells advanced $5,386.00 for hazard insurance and then added this amount to the loan's Escrow Account History, further inflating and misstating the escrow account, as well as

overstated the total amount due on the loan.

36. The Defendant has failed to properly maintain or correct its books and records with respect to Plaintiff's escrow account for hazard insurance and real estate taxes, causing threatening and harassing letters to be sent to Plaintiff in efforts to collect money which was not properly due and owing at the time the collection efforts were undertaken by Defendant.

37. The Proof of Claim filed by Wells in this case is erroneous and fails to properly credit Plaintiff with payments made on the loan pre-petition, and further includes charges for which Plaintiff is not liable, thereby inflating the total amount due.

38. Wells never missed an opportunity to create confusion and uncertainty in its regular communications with Plaintiff regarding the fluctuating interest rate on the loan or regarding what Wells claimed it was doing with respect to payments it was making for hazard insurance or real estate taxes.

39. As a result of these frequently conflicting communications from Wells, the actual and correct status of the loan and amount due is not known and may never be known.

40. Wells began its first attempt to foreclose on the property in April 2005, at which time the total amount due on the loan was alleged to be $240,986.57.

41. The Plaintiff endeavored to reinstate the mortgage and was informed that the amount required to reinstate the mortgage was either $24,565.53, $24,725.53, $22,667.53, $25,701.65 $24,770.27 or $26,828.27, all of which are actual figures stated to Plaintiff during the period June 2005 through August 2005 while the parties were discussing reinstatement. Wells itself and its counsel could not decipher their records in order to accurately determine the reinstatement amount.

42. Defendant Wells Fargo ultimately stated the amount needed to reinstate the mortgage was $26,828.27 and that payment of this amount would include the principal and interest payment due for September 1, 2005.

43. Plaintiff tendered payment of this amount on August 5, 2005, Defendant Wells accepted payment on that date and the foreclosure action was dismissed.

44. Despite the payment of the reinstatement amount which included the payment due for September 2005 and dismissal of the foreclosure action, on September 24, 2005 Wells contacted the Plaintiff and stated that the mortgage payment was due for September and they had no record of having received the reinstatement amount.

45. The new mortgage statements issued by Wells to Plaintiff also failed to credit Plaintiff with payment of the reinstatement amount and thereby overstate the amount due each month as a result.

46. In short, despite having accepted payment of the $26,828.27 reinstatement amount, Wells was now choosing to ignore that fact and instead was proceeding as if payment had never been made.

47. Multitudinous telephone calls from the Plaintiff to Wells to rectify this error proved fruitless, as Wells continued to assert that the mortgage was due for September 2005.

48. Nevertheless, plaintiff made every effort to make mortgage payments while attempting to resolve the latest discrepancy with defendant.

49. More strangely yet, however, Wells issued a new Notice of Intention to Foreclose, on November 28, 2005, stating the mortgage was due from October 1, 2005 to November 28, 2005, implicitly conceding the September 2005 mortgage payment had been made.

50. Inasmuch as Wells is now manipulating and fabricating whatever numbers it needs to justify its legal actions, it was not humanly possible for Plaintiff to ascertain the status of this loan.

51. The substitute 1098 issued by Wells for 2005 states interest paid for the year amounted to $20,207.47, and the principal balance at the end of the year was $239,829.25, an increase of almost $3,700 over the year end figure for 2004.

52. Plaintiff avers that the actual total amount paid to Wells for 2005 was $40,972.61.

53. Despite plaintiff's tireless efforts to address the mortgage default fabricated by defendant, Wells commenced its second foreclosure action on January 5, 2006. Plaintiff attempted to persuade Wells to hold off this action while working with Plaintiff in resolving the various and many questions presented and was advised by Wells' representatives that the foreclosure would be deferred while working through these issues.

54. Despite having been informed by Wells that the foreclosure was not being actively prosecuted, Plaintiff learned on February 22, 2006 that Wells' attorneys had filed a motion for entry of default.

55. There are numerous errors, issues and omissions regarding the service of the foreclosure summons and complaint and it is averred by Plaintiff that service of process was not properly effected on Plaintiff in the foreclosure action.

56. On May 5, 2006, after months of futile efforts to obtain meaningful information either from Wells or its attorneys regarding the factual basis for the foreclosure, Plaintiff retained his own counsel.

57. Wells' attorneys did not reply to Plaintiff's counsel's request for information regarding the amount required to reinstate the mortgage and pay off the loan for more than thirty days, and even then the response did not include the reinstatement information.

58. Although Plaintiff was now represented by counsel, Wells' attorneys failed and neglected to communicate with Plaintiff's counsel regarding Wells' Notice of Motion for Judgment, and Wells continued to move toward judgment without providing notice to Plaintiff's counsel.

59. Wells also filed a Certification of Proof of Amount Due which stated the total amount due on

the mortgage as of June 5, 2006 was $255,513.32, which is erroneous, and this certification also stated the original interest rate on the late to be 9.875% when it was actually 8.5%

60.  In the response to Plaintiff's attorneys' request for payoff information, a letter dated June 5, 2006, Wells' counsel states the payoff figure as of June 29, 2006 is $265,290.30, a figure nearly $10,000 greater than that certified to by Wells' agents in their Certification of Proof of Amount Due.

61.  Wells obtained a Final Judgment in the amount of $255,513.32 but never served this on Plaintiff.

62.  In pre-Sheriff's Sale litigation, Superior Court orders retention of an accounting firm, Gillen & Jonson, PA, to attempt to clarify actual and correct status of the mortgage and determination of amount due and accounting for all payments made by plaintiff.

63.  The Accountant's Report Narrative states that "...Wells' accounting for this loan has in fact been inconsistent..." and that "...Wells' responses to multiple requests, both verbal and written, made by the homeowners and their attorneys, on record, contained frequently changing, inconsistent and erroneous information."

64.  Plaintiff has incurred in excess of $100,000 in fees for attorneys and accountants while challenging Wells' efforts to foreclose on his home, obtain fees and costs to which it is not entitled and engaging in this ongoing campaign of harassment and flagrant abuse of its fiduciary duty to Plaintiff.

### First Claim for Relief
### (Violation of the Automatic Stay)

65.  The allegations in paragraphs 1 through 64 of this complaint are realleged and incorporated herein by this reference.

66.  The actions of the Defendant in improperly servicing the Plaintiff' escrow account constitute a gross violation of the automatic stay as set forth in 11 U.S.C. Section 362(a)(3).

67.  As a result of the above violations of 11 U.S.C. Section 362, the Defendant is liable to the Plaintiff for actual damages, punitive damages and legal fees.

### Second Claim for Relief
### (New Jersey Consumer Fraud Act)

68.  The allegations in paragraphs 1 through 67 of this complaint are realleged and incorporated herein by this reference.

69.  The Plaintiff and Defendant are "persons" as that term is defined in the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.

70.  The Plaintiff' relationship with the Defendant arose out of a "consumer transaction" as that term

is defined in N.J.S.A. 56:8-1.

71.   The Defendant's improper and unauthorized assessment of fees and charges against Plaintiff' account constitute the acquisition of money or property by unlawful practices in violation of N.J.S.A. 56:8-10.

72.   As a result thereof, the Defendant is liable for statutory damages and the payment of legal fees and expenses and treble damages thereon.

### Third Claim for Relief
### (Fair Debt Collection Practices Act)

73.   The allegations in paragraphs 1 through 72 of this complaint are realleged and incorporated herein by this reference.

74.   The Defendant violated the FDCPA. Defendant's violations include but are not limited to engaging in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt, 15 U.S.C. Section 1692d.

75.   As a result of the above violations of the FDCPA, the Defendant is liable to the Plaintiff for actual damages, statutory damages of $1,000.00, and attorney's fees.

### Fourth Claim for Relief
### (Sections 105 and 506 of Title 11 of the United States Code)

76.   The allegations in paragraphs 1 through 75 of this complaint are realleged and incorporated herein by this reference.

77.   The actions of the Defendant – in failing to properly service the loan and in charging the account of Plaintiff fees which have not been approved by the Bankruptcy Court pursuant to Section 506(b) and Fed. R. Bankr. Pro. 2016 – constitute a willful or negligent violation of Defendant's duties to Plaintiff.

78.   As a result of the above violations, the Defendant is liable to the Plaintiff for actual damages, punitive damages and legal fees.

### Fifth Claim for Relief
### (Improper and Unauthorized Fees)

79.   The allegations in paragraphs 1 through 78 of this complaint are realleged and incorporated herein by this reference.

80.   The Plaintiff aver, upon information and belief, that the actions alleged herein are acts in violation of Section 506 of Title 11 of the United States Code, as the bankruptcy related fees charged by the Defendant were not part of the underlying agreement by and between the holder of the loan and

the debtors, and the fees and costs are otherwise unreasonable and excessive.

81.     As a result of the above violations, the Defendant is liable to the Plaintiff for actual damages, punitive damages and legal fees.

## Sixth Claim for Relief
## (Unjust Enrichment)

82.     The allegations in paragraphs 1 through 81 of this complaint are realleged and incorporated herein by this reference.

83.     By collecting fees and money for items such as forced placed insurance to which it was not entitled, defendant has been unjustly enriched.

84.     As a result of the above violations, the Defendant is liable to the Plaintiff for actual damages, punitive damages and legal fees.

## Sixth Claim for Relief
## (Breach of Contract)

85.     The allegations in paragraphs 1 through 84 of this complaint are realleged and incorporated herein by this reference.

86.     Defendant has breached its contractual obligations to plaintiff as set forth in both the mortgage and note.

87.     Defendant had breached its duty of good faith and fair dealing.

88.     As a result of defendant's breach, plaintiff has suffered compensatory and consequential damages.

## Seventh Claim for Relief
## (Negligence)

89.     The allegations in paragraphs 1 through 88 of this complaint are realleged and incorporated herein by this reference.

90.     As the servicer for plaintiff's mortgage loan, defendant undertook a duty to service the loan in a professional manner and properly apply all payments made by plaintiff.

91.     Defendant continues to breach its duty to plaintiff.

92.     As a proximate result of said breach, plaintiff has suffered damages.

### Eighth Claim for Relief
### (Reconsideration of Proof of Claim)

93. The allegations in paragraphs 1 through 92 of this complaint are realleged and incorporated herein by this reference.

94. Pursuant to 11 U.S.C. §502(j), an allowed claim may be reconsidered for cause.

95. Cause exists for this court to reconsider the allowed claim of defendant filed in this matter and to disallow said claim in its entirety.

**WHEREFORE,** the Plaintiff having set forth his claims for relief against the Defendant respectfully pray of the Court as follows:

> A. That the Plaintiff have and recover against the Defendant a sum to be determined by the Court in the form of actual damages;
>
> B. That the Plaintiff have and recover against the Defendant a sum to be determined by the Court in the form of statutory damages;
>
> C. That the Plaintiff have and recover against the Defendant a sum to be determined by the Court in the form of consequential damages;
>
> D. That the Plaintiff have and recover against the Defendant a sum a sum to be determined by the Court in the form of punitive damages;
>
> E. That the Plaintiff have and recover against the Defendant all reasonable legal fees and expenses incurred by his attorney;
>
> F. That this Court order the Defendant to pay additional actual damages and statutory damages in a sum to be determined by the Court for violation of N.J.S.A. 56:8-1, et seq.;
>
> G. That this Court order the Defendant to pay additional actual damages and statutory damages in a sum to be determined by the Court for violating the FDCPA pursuant to 15 U.S.C. Section 1692k;
>
> H. That the underlying debt to the Defendant be forever canceled and discharged;
>
> I. That the proof of claim filed by Defendant be disallowed; and

J  That the Plaintiff have such other and further relief as the Court may deem just and proper.

LEVITT & SLAFKES, P.C.  
**Attorneys for Plaintiff**

By: /s/Bruce H. Levitt  
Bruce H. Levitt

**Dated: May 11, 2009**